IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Richard M. Campbell, | ) | Civil Action No. 8:12-cv-01869-JDA |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin[1], | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a magistrate judge; and the Honorable Mary G. Lewis's Order of Reference [Doc. 14.]. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner is affirmed.

## PROCEDURAL HISTORY

On June 30, 2006, Plaintiff filed an application for DIB, alleging an onset of disability beginning February 22, 2006. [R. 61-65.] The claim was denied initially on August 24, 2006 [R. 30-31], and on reconsideration on October 30, 2006 [R. 32-33], by the Social Security Administration ("the Administration"). Plaintiff requested a hearing before an

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February13, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

administrative law judge ("ALJ") and on August 8, 2008, ALJ Richard L. Vogel conducted a de novo hearing on Plaintiff's claim. [R. 15-29.]

On August 19, 2008, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") from June 1, 2006, through the date of the decision. [R. 6-14.] Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review. [R.1-3. ] After an appeal to the United States District Court for the District Court of South Carolina, however, the case was remanded to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g). [R. 263–64.] Pursuant to the District Court remand order,[2] the Appeals Council directed the ALJ to consider new evidence pursuant to sentence six of 42 U.S.C. 405(g) because, as *a pro se* claimant, the claimant was not aware of the opportunity to submit new evidence to the Appeals Council that was material to his claim. [R. 226, 285–286.] The Appeals Council further directed the ALJ to provide the claimant the opportunity for a new hearing; address the additional evidence; and issue a new decision. [R. 286.]

On April 3, 2012, Plaintiff, represented by counsel, appeared and testified at a hearing before ALJ Vogel. [R. 238–250.] The ALJ issued a decision on May 4, 2012, finding Plaintiff not disabled under sections 216(i) and 223(d) of the Social Security Act from February 22, 2006 through December 31, 2010. [R. 223-237.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2010, and had not engaged in substantial gainful activity from his alleged onset date of February

---

[2]*See*, 2011 WL 2580634, Case No. 8:10-cv-1642-RMG-JDA (D.S.C. June 10, 2011).

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

22, 2006, through his date last insured of December 31, 2010.  [R. 228, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine status-post fusion and lumbar radiculopathy.  [R. 228, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of fibromyalgia and depression. [R. 228–229.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 229, Finding 4.] The ALJ specifically addressed Plaintiff's severe impairment under Listing 1.04.  *Id.*

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, Plaintiff found Plaintiff retained the residual functional capacity ("RFC") to "sit, stand, and walk each for 6 hours of an 8-hour day; frequently lift/carry 10 pounds; occasionally lift 20 pounds; and never be exposed to excessively cold temperatures or climb." [R. 229, Finding 5.]  Based on this RFC finding, at Step 4, the ALJ determined Plaintiff was capable of performing his past relevant work as a sales associate.  [R. 232, Finding 6.]  On this basis, the ALJ found Plaintiff had not been under a disability, as defined by the Act, from February 22, 2006, the alleged onset date, through December 31, 2010, the date last insured.    [R. 232, Finding 7.]  Plaintiff filed this action for judicial review on July 5, 2012.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff argues

1.    the ALJ performed a flawed Step 3 analysis because he did not properly consider the combined effect of Plaintiff's impairments [Doc. 19 at 6–8; Doc. 22 at 2–3]; and

    2.      the ALJ performed a flawed Step 4 analysis because he conducted a flawed credibility analysis and failed to properly explain the credibility analysis [Doc. 19 at 8–10; Doc. 22 at 3–5].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that the ALJ

    1.      adequately considered the combined effects of Plaintiff's impairments because the ALJ discussed each impairment both individually and in combination [Doc. 21 at 9–13]; and

    2.      adequately explained his findings that Plaintiff was not entirely credible and based that finding upon reasonable consideration of proper regulatory factors [*id.* at 14–20].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is

4

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

5

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

6

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact.  *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g., Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the

8

fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.   *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.   *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a

9

disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the

10

claimant's RFC[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the RFC to do his past work. 20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. § 404.1520(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have

---

[5]RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. § 404.1569a(c)(1).

found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition

13

for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

15

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

*see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

16

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

## Combination of Impairments at Step 3

Plaintiff contends the ALJ failed to consider the combined effect of Plaintiff's multiple impairments.  [Doc. 24 at 14.]  Plaintiff argues that, while the ALJ seems to have evaluated Plaintiff's impairments to determine whether he met listing criteria, he failed to "adequately explain his ... evaluation of the combined effects of the impairments." [*Id.* at 15.] Specifically, the Plaintiff points out that

> while the ALJ professed to account for [Plaintiff's] severe and non-severe [impairment] of depression, it is unclear from the face of the [opinion], at any step, that he did so. The ALJ himself assessed limitations (though mild) across all three areas of functioning, but fails to analyze whether these difficulties, in combination with [Plaintiff's] orthopedic [limitations]  and pain, limited his ability to work. This legal error is deserving of remand.

17

[*Id.* at 15–16.]

The Commissioner counters that the ALJ in this case "gave careful consideration to the 'entire record' and 'all symptoms,' and he specifically referred to a 'combination of impairments' in deciding that Plaintiff's impairments did not meet or equal a listing." [Doc. 26 at 5 (*internal references to the record omitted*).] The Commissioner further contends that the ALJ also considered the combined effect of Plaintiff's symptoms in articulating Plaintiff's RFC and that Plaintiff failed to point to any symptom that ALJ failed to include in his analysis. [*Id.* at 6–7.]

As stated in the Act:

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.

42 U.S.C. § 423(d)(2)(B). Therefore, if an ALJ finds a claimant has a severe impairment or combination of impairments, the ALJ must consider all of the claimant's impairments, including non-severe impairments and the limitations imposed by all the claimant's impairments, at the remaining steps of the sequential analysis. *Id.*; SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). The ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Walker*, 889 F.2d at 50 ("As a corollary to th[e] rule [that the ALJ must evaluate the combined effect of the claimant's impairments], the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." (citing *Reichenbach v.*

*Heckler*, 808 F.2d 309, 312 (4th Cir. 1985)).  Courts in this district have found the ALJ's discussion and analysis adequate where a reading of the decision as a whole makes clear that the ALJ considered the combination of impairments.  *See Brown v. Astrue*, No. 0:10-cv-01584-RBH, 2012 WL 3716792 (D.S.C. Aug. 28, 2012) (holding the decision as a whole makes clear that the Commissioner considered the combined effect of a claimant's impairments); *Thornsberry v. Astrue*, No. 4:08-4075-HMH, 2010 WL 146483 *5 (D.S.C. Jan. 12, 2010) ("[W]hile the ALJ could have been more explicit in stating that his discussion dealt with the combination of [the plaintiff's] impairments, his overall findings adequately evaluate the combined effect of [the plaintiff's] impairments.").

Here, the ALJ found Plaintiff had a severe impairment of degenerative disc disease of the cervical spine status-post fusion and lumbar radiculopathy. [R. 228, Finding 3.]  The ALJ considered Plaintiff's impairment under the appropriate Listing, 1.04, but found that the "evidence of record fails to indicate that the claimant suffers from a disorder of the spine resulting in nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication." [R. 229, Finding 4.]  In addressing Plaintiff's non-severe impairments of fibromyalgia and depression, the ALJ noted:

> While the claimant's representative alleges that his fibromyalgia is a severe impairment, treatment notes from Dr. Carlyle Barfield, a rheumatologist, do not document that 11 of 18 tender (trigger) point sites were found on digital palpation (Exhibit 14F). Due to the lack of specific findings regarding this diagnosis, I find the alleged impairment of fibromyalgia to be non-severe.
>
> Although treatment notes document some treatment for depression, which has been limited to the prescription of anti-depressants, the medical evidence reveals that the claimant's depression is non-severe. The claimant has never sought psychiatric treatment or counseling, and has never been hospitalized or treated by a mental health facility. Additionally, although the claimant has been assessed with depression, this condition has not resulted in more than: mild restriction in his activities of daily living; mild limitations in his social

19

functioning; mild deficiencies of his concentration, persistence, or pace, and any episodes of deterioration or decompensation in work or work-like settings. As a result, the claimant's depression has no more than a minimal effect on the claimant's ability to perform basic work activities and is a non-severe impairment (20 C.F.R. §404.1521).

[R. 229.]  The ALJ also addressed the combined effect of Plaintiff's impairments, both

severe and non-severe, as follows:

Moreover, the undersigned has considered the combined effects of the claimant's impairments, both severe and non-severe, and has determined that the findings related to them are not at least equal in severity to those described in Listing 1.04. *See also Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989). Specifically, the undersigned notes that while the claimant has been assessed with degenerative disc disease and fibromyalgia with some treatment for depression from his primary care provider, the combination of impairments does not result in an inability to ambulate effectively, an inability to perform fine and gross movements effectively, sustained disturbance of gross and dexterous movements, sustained disturbance of gait and station, or significantly interfere with activity during the day. While the claimant has some complaints of pain with ambulation, lifting, and sitting, the record does not documents [sp] that the combination of these impairments are equal in severity to the Listings referenced above, as he is able to ambulate independently and complete activities during the day without significant interference from his impairments. Treatment notes also document normal extremity strength and sensation on exam.

[R. 229.]

### *Analysis*

Upon review, the Court finds the ALJ adequately explained his evaluation of the

combined effects of Plaintiff's impairments, discussing Plaintiff's individual impairments as

well as  the combined effects of Plaintiff's impairments on his total disability.  [R. 229.] The

ALJ specifically noted that the Plaintiff's impairments, severe and non-severe, considered

in combination, do not equal in severity to Listing 1.04A, B or C.[7]  He found no evidence of an inability to ambulate effectively or an inability to perform fine and gross movements effectively, no sustained disturbance of gross and dexterous movements, no sustained disturbance of gait and station, and nothing that significantly interfered with activity during the day. [*Id.*]   While the Plaintiff argues the ALJ failed to consider Plaintiff's impairments in combination, Plaintiff never contends that any of the Listings are met by Plaintiff's impairments, either singly or in combination.  Additionally, Plaintiff never explains how the presence of his mild mental impairments changes the ALJ's listing analysis. The ALJ expressly considered the elements of Listing 1.04 and, even when considering the combination of impairments, found that the Listing was not met.  To the extent Plaintiff is arguing that his mental limitations were not taken into account in the RFC, Plaintiff failed to explain how these mild limitations prevent him from performing light work.  *Grant v. Schweiker*, 699 F.2d at 191(through the fourth step, the burden of production and proof is

---

[7] Listing 1.04 *Disorders of the Spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

   A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

   B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

   C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

on the claimant.)    Thus, the Court finds that the ALJ adequately considered the combination of Plaintiff's impairments at Step 3.

**Credibility Determination at Step 4**

Plaintiff alleges the ALJ's credibility analysis was not based on substantial evidence and was not derived from proper consideration of the relevant regulatory criteria.  [Doc. 24 at 16.] Specifically, Plaintiff claims the ALJ failed to evaluate "the record as a whole."  [*Id.* at 18.]  The Plaintiff also takes issue with the ALJ giving controlling weight to the opinion of Dr. Pacult that Plaintiff "should be employable in some capacity" as it is not a medical opinion and is directed to a matter reserved for the Commissioner. [*Id.* at 19.]  Lastly, Plaintiff argues the ALJ's RFC assessment, which found Plaintiff capable of sustained walking, sitting and standing, assigned functional capacity without explanation, when the record clearly puts these functions at issue. [*Id.* at 20.]  The Commissioner, on the other hand, contends the ALJ "did 'evaluate the record as a whole' in his credibility determination, using a straightforward organizational strategy." [Doc. 26 at 8.] The Commissioner also contends the ALJ's RFC was "'based on all the relevant medical and other evidence.'" [*Id.* at 10.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.  SSR 96-7p, 61 Fed. Reg. at 34,485.  The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a non-exhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. § 1529(c)(3). If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

Likewise, to assess Plaintiff's RFC,  the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements.  The Administration has provided a definition of RFC and explained what an RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on

> that basis. A "regular and continuing basis" means 8 hours a day, for 5 days
> a week, or an equivalent work schedule....

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and

footnotes omitted).  Additionally, the Administration has determined that in assessing RFC,

the ALJ

> must consider only limitations and restrictions attributable to medically
> determinable impairments. It is incorrect to find that [a claimant] has
> limitations or restrictions beyond those caused by his or her medical
> impairment(s) including any related symptoms, such as pain, due to factors
> such as age or height, or whether the [claimant] had ever engaged in certain
> activities in his or her past relevant work (e.g., lifting heavy weights.)  Age
> and body habitus (i .e., natural body build, physique, constitution, size, and
> weight, insofar as they are unrelated to the [claimant]'s medically
> determinable impairment(s) and related symptoms) are not factors in
> assessing RFC....

Id. at 34,476.  Thus, an ALJ's RFC assessment will entail assessing the credibility of any

alleged limitations, including assessing the credibility of testimony offered by the claimant.

### ALJ's Analysis

In this case, the ALJ accepted that Plaintiff's impairments could reasonably have

been expected to cause some of his alleged symptoms, but that Plaintiff's statements

concerning the intensity, persistence, and limiting effects of these symptoms were not

credible to the extent they were inconsistent with the RFC assessment.  [R. 230.] The ALJ

explained the basis for his determination as follows:

> In terms of the claimant's neck problems, the record reveals that the
> claimant's surgery was generally successful. Specifically, treatment notes
> document that the claimant reported an improvement in pain in his neck, arm
> and hand and an increased ability to raise his arm following the surgery
> (Exhibits 3F and 4F). While the claimant has reported that he continues to
> experience some neck pain and has limited range of motion of his neck,
> there is no indication that the claimant has required emergency treatment or
> inpatient hospitalization for this condition since his surgery.  In April 2006, Dr.
> Pacult noted that there was no radicular component to the claimant's neck

pain. Neurologic examination was also normal (Exhibit 4F). In fact, in June 2006, Dr. Pacult released the claimant to return on an as-needed basis (Exhibit 4F). Although the claimant complained of a burning pain in his neck every 1-2 days in January 2007, Dr. Pacult found no deficits on exam and noted that the claimant may have to live with some discomfort. He was advised to be more active, as that would not likely disrupt his fusion (Exhibit 10F). In April 2008, Dr. Pacult noted relatively benign clinical findings despite the claimant's complaints of severe neck pain, for which he prescribed Lortab and an MRI (Exhibit 10F). When the claimant returned to Dr. Pacult in November 2007, he was assessed with non-radicular neck pain and was again advised to return on an as needed basis (Exhibit 10F). Despite complaints of continued neck pain in October 2008, Dr. Pacult noted that the claimant had an essentially normal exam. Imaging did not reveal any ruptured discs or significant compression (Exhibit l0F). Although Dr. Pacult noted in November 2008 that conservative treatment had not been successful, there were no objective neurologic findings on exam and he did not recommend additional surgery (Exhibit 10F). In December 2008, Dr. Pacult recommended that the claimant return on an as needed basis. He also reported that the claimant returned two unfilled prescriptions for Lortab (Exhibit 10F). There is no documentation that the claimant has sought follow-up care since that date from Dr Pacult. When the claimant presented to Dr. Barfield for rheumatologic evaluation in December 2008, Dr. Barfield initially assessed the claimant with osteoarthritis (Exhibit 10F). The claimant did receive some trigger point injections from Dr. Barfield for low back pain, but his treatment notes do not document any care after August 2008 (Exhibit 14F). Additionally, the claimant has not required additional treatment for pain including biofeedback, surgery, epidural injections or treatment from a pain clinic since his surgery. The claimant testified at both hearings that he stopped taking Darvocet at the advice of his primary care physician and now he only takes Aleve for pain.

While the claimant sought treatment for low back pain in October 2008, Dr. Pacult prescribed an analgesic and physical therapy for the claimant's low back pain. In December 2008, Dr. Pacult reported that there were no findings supporting a cause for his complaints of left paresthesias (Exhibit 10F). There is no indication that the claimant has required inpatient hospitalization for this condition.

Overall, this conservative course of treatment is inconsistent with a level of severity that would preclude the claimant from sustaining any work activity.

The doctors' own reports also fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were disabled. In April 2007, Dr. Pacult noted that the claimant had increased tone in his cervical and shoulder muscles, but good strength and shoulder movement.

There were no sensory abnormalities (Exhibit 14F). A cervical MRI in April 2007 revealed postoperative changes with little interval change, a small herniation at C2-3, and a bulging disc at C5-6 with an annular tear, but no foraminal compression (Exhibit 10F).  X-rays of the lumbar spine in June 2007 revealed mild degenerative disc disease at L3-4 (Exhibit 11F). Examination in June 2007 revealed 5/5 strength in the lower extremities and negative straight leg raising. There was some pain with bending to the right (Exhibit IIF). Examination in November 2007 revealed normal cerebellar function and good motor strength, sensation, and reflexes (Exhibit 10F). In October 2008, an MRI noted a slight increase in disc extrusion at C2-3 with mild to moderate stenosis. C3-5 was stable with no stenosis (Exhibit 10F). Exam in October 2009 noted some difficulty walking, but normal muscle strength, motor strength, and sensation. There was no lower extremity weakness (Exhibit I2F). X-rays in August 2010 revealed minimal degenerative joint disease ofthe lumbar spine (Exhibit 16F).

The claimant has described activities, including doing laundry, cooking, walking to his mother's house, and attending church, which are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations.

As for the opinion evidence, pursuant to 20 CFR §404.l527 and Social Security Rulings 06-3p, 96-6p and 96-2p, I have considered the medical opinions, which are statements from acceptable medical sources which reflect judgments about the nature and severity of the impairments and resulting limitations, of the claimant's treating physicians, evaluating physicians, and the state agency medical consultants. I accord controlling weight to the assessment of the claimant's treating neurosurgeon, Dr. Arthur Pacult, from June 2006 that the claimant could not return to his past relevant work as a painter as he could not climb ladders but that "he should be able to be employable in some capacity," as this opinion is consistent with the objective evidence of record (Exhibit 4F).  Moreover, Dr. Pacult indicated the claimant "has improved and he has a stationary course." Regarding the medical opinions ofthe DDS medical consultants, I accord them significant weight as their opinions are generally consistent with the other evidence of record.

In sum, the above residual functional capacity assessment is supported by documentation in the record that while the claimant has continued to experience some pain and limited range of motion of the neck following his March 2006 surgery, as well has some problems with low back pain. I have considered the claimant's testimony that he has limited lifting capabilities and that cold air increases his pain in limiting him to light work with no exposure to excessively cold temperatures. Although the claimant's allegations of regarding his limited ability to stand and sit were not fully consistent with the

record, I accorded the claimant the benefit of the doubt in limiting the amount he can sit, stand, walk, climb, lift and carry. However, I cannot find the claimant's allegations that he is incapable of all work activity to be credible. This residual functional capacity is also based on the claimant's activities of daily living being inconsistent with disabling neck and back pain and the significant weight assigned to the opinion of Dr. Pacult that the claimant would be limited in his ability to climb ladders.

[R. 231–232.]

### Analysis

Upon review of the record and the ALJ's decision, the Court finds the ALJ conducted a proper analysis in determining the credibility of Plaintiff's subjective complaints by fully explaining his decision and citing relevant evidence. Additionally, the Court finds the ALJ's RFC analysis is supported by substantial evidence.

In determining Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, the ALJ considered Plaintiff's subjective complaints in conjunction with his ability to perform activities of daily living and found those activities of daily living were inconsistent with Plaintiff's allegations of significant functional limitations. [R. 232; see 20 C.F.R. § 404.1529(c)(3)(i) (stating a claimant's daily activities is one factor the ALJ will consider while evaluating a claimant's symptoms, including pain).] The ALJ also noted that Plaintiff's treating physician, Dr. Pacult, made relatively benign clinical findings despite Plaintiff's pain complaints and that he advised Plaintiff to be more active. [R. 231.] Further, the ALJ noted that Plaintiff has not sought care from Dr. Pacult[8] since December 2008, has not required additional

---

[8]Plaintiff contends the ALJ improperly gave "controlling weight" to Dr. Pacult's opinion that Plaintiff "should be employable in some capacity," because it is not a medical opinion as defined by the regulations. Specifically, the ALJ noted that he gave "controlling weight to the assessment of the claimant's treating neurosurgeon, Dr. Arthur Pacult, from June 2006 that the claimant could not return to his past relevant work as a painter as he could not climb ladders but that 'he should be able to be employable in some capacity,'"

treatment for pain including biofeedback, surgery, epidural injections or treatment from a pain clinic since his surgery, and now only takes Aleve for pain. [*Id.*] Overall, the ALJ found Plaintiff's conservative course of treatment to be inconsistent with a level of severity alleged by Plaintiff. [*Id.*]

With respect to Plaintiff's allegations that he has difficulty walking, sitting and standing, the ALJ found Plaintiff's examination in June 2007 revealed 5/5 strength in the lower extremities and negative straight leg raising; and that an examination in November 2007 revealed normal cerebellar function as well as good motor strength, sensation and reflexes. [*Id.*] An exam in October 2009 noted some difficulty walking, but normal muscle strength, motor strength, sensation, and no lower extremity weakness. [R. 232.] Additionally, the ALJ considered Plaintiff's activities of daily living which included "doing laundry, cooking, walking to his mother's house, and attending church." [*Id.*] Plaintiff testified that he cooks two times a week and does laundry about two to three times a week. [R. 246.] He also testified that, during the day, he "just sits on the porch" or he may "go out and maybe pull a little weed here and there. Summertime I can get out the house more and do just a little bit more than I do in the wintertime. Wintertime I don't hardly come out of th house too much." [*Id.*] When asked what his most comfortable position was, Plaintiff

---

as this opinion is consistent with the objective evidence of record (Exhibit 4F)." [R. 232.] The law is clear, that "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir.2001). And even if this opinion can be read to be an opinion regarding disability reserved for the Commissioner and not a medical opinion, the ALJ is still required to "review all of the medical findings and other evidence that support a medical source's statement that [a claimant is] disabled." 20 C.F.R. § 404.1527(e) (2005). Upon review, the Court finds no error in the assignment of weight to Dr. Pacult's opinion by the ALJ as the ALJ found the opinion to be consistent with the evidence of record.

testified "[s]itting down.  I sit down for a little while and I get up and walk." [R. 247.]  He testified that he does not lie down much, but does try to sit still. [*Id.*]

While Plaintiff points out evidence of record which could support the credibility of Plaintiff's pain complaints, as well as his alleged inability to maintain a sitting or standing position for a long period of time, the ALJ properly evaluated and explained his reasoning for discounting Plaintiff's complaints and for not limiting his sitting or standing based on those pain complaints.  Declining to substitute its judgment for that of the ALJ in making credibility determinations, the Court finds that substantial evidence supports the ALJ's credibility assessment.  Therefore, the Court concludes the ALJ's credibility determination does not provide a basis for reversing the Commissioner's decision.  Further, because the ALJ's RFC analysis is based on a proper credibility determination, the Court likewise finds the ALJ's RFC analysis is supported by substantial evidence.

## CONCLUSION

Wherefore, based upon the foregoing, the Commissioner's decision is  AFFIRMED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 26, 2014
Greenville, South Carolina